FILED

MAR 27 2017


CLERK

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

| | |
|---|---|
| Nora Patricia Ruiz, individually and as Next Friend to S.R., E.R. and H.R., Minors,<br><br>Plaintiffs,<br><br>-vs-<br><br>TRW Vehicle Safety Systems, Inc.,<br><br>Defendant. | 3:17-CIV 3006<br><br>**PLAINTIFF'S ORIGINAL COMPLAINT** |

**To the Honorable Judge of Said Court:**

COMES NOW, Nora Patricia Ruiz, individually and as next friend to S.R., E.R. and H.R., minors (hereinafter referred to as "Plaintiffs"), file this Original Complaint against TRW Vehicle Safety Systems, Inc. (hereinafter referred to as "Defendant").

In support hereof, Plaintiffs would state and show unto the Honorable Court the following:

## I. Parties

1. Plaintiff, Nora Ruiz, is the wife of Hector Ruiz and Next Friend to S.R., E.R. and H.R., minor children; and resides in and is a citizen of Jacksonville, Texas.

2. Defendant, TRW Vehicle Safety Systems, Inc. is a foreign corporation doing business in Texas, and service of process upon this Defendant may be had by serving its registered agent for service, Corporation Service Company D/B/A CSC-Lawyers

Plaintiff's Complaint
Page 1 of 11

Incorporating Service Company at 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

## II. Jurisdiction

3. This Court has jurisdiction over the lawsuit under the provisions of 28 U.S.C. Section 1332.

## III. Facts

4. On or about January 21, 2015, Hector Ruiz was riding in a 2006 Ford F250 (VIN#1FTSX21Y96ED93318) traveling southbound on Highway 47 near Reference Marker 27 in Gregory County, South Dakota.

5. The 3-point restraint system was designed by TRW Vehicle Safety Systems, Inc.

6. The 3-point restraint system was manufactured by TRW Vehicle Safety Systems, Inc.

7. The 3-point restraint system was also assembled and tested by TRW Vehicle Safety Systems, Inc.

8. The vehicle lost control, skidded, traveled through a ditch and ultimately the vehicle rolled.

9. At the time of the accident, Hector Ruiz was properly seated and wearing his 3-point seat belt.

10. However, despite being properly restrained, Hector Ruiz suffered fatal injuries when the restraint system failed to protect him because it violated several crashworthiness principles.

11. There are five (5) recognized crashworthiness principles in the automobile industry/throughout the world. They are as follows:

   a. Maintain survival space;

   b. Provide proper restraint throughout the entire accident;

   c. Prevent ejection;

   d. Distribute and channel energy; and

   e. Prevent post-crash fires.

12. When the National Highway Traffic Safety Administration (NHTSA) created the Federal Motor Vehicle Safety Standard (FMVSS) in the late 1960's, the preamble to the safety standards included the above definition of crashworthiness.

13. Crashworthiness safety systems in a vehicle must work together like links in a safety chain. If one link fails, the whole chain fails.

14. Vehicle and component part manufacturers have known for decades and have admitted under oath that there is a distinction between the cause of the accident versus the cause of an injury.

15. Indeed, vehicle and component part manufacturers have known for decades that crashworthiness is the science of preventing or minimizing injuries or death following an accident through the use of a vehicle's various safety systems.

16. Lee Iacocca, former President of Ford Motor Company stated, while President and CEO of Chrysler, that "Every American has the right to a safe vehicle."

17. General Motors has stated in the past that, "The rich don't deserve to be safer…Isn't it time we realized safety is not just for the pampered and the privileged? Safety is for all."

18. Volvo has stated that it has a goal that no one is killed or injured in a Volvo vehicle by the year 2020. Volvo has also stated that, "Technologies for meeting the goal of zero injuries and fatalities are basically known today – it is a matter of how to apply, finance, distribute and activate."

19. Because every American has the right to a safe vehicle, because safety is for all, and because technologies for meeting the goal of zero injuries and fatalities are basically known today, it is incumbent upon vehicle and component part manufacturers to investigate and find out what other companies are doing with regards to safety and to apply those same methods or technology.

20. Furthermore, a vehicle or component part manufacturer cannot choose to use safer technology in Europe, Australia, Japan, or some other country and refuse or fail to offer that same safety technology to consumers in America.

21. While there are minimum performance standards which are supposed to be met before selling a vehicle in the United States (the FMVSS), these minimum performance standards to not adequately protect the public.

22. Indeed, Joan Claybrook, former administrator of the NHTSA, wrote a letter to major auto makers where she said, "Our federal safety standards are and were

intended by Congress to be minimum standards. The tragedy is that many manufacturers have treated the standards more like ceilings on safety performance rather than floors from which to improve safety."

23. Additionally, in September of 2014, a Congressional report was issued in response to the General Motors ignition switch recall. The report questioned whether NHTSA had the technical expertise, culture and analytic tools needed to address safety issues. The report stated, "NHTSA also lacked the focus and rigor expected of a federal safety regulator." It was also stated that NHTSA staff has a "lack of knowledge and awareness regarding the evolution of vehicle safety systems they regulate."

## IV. Cause(s) of Action as to Defendant

24. It was entirely foreseeable to and well-known by Defendant that accidents and incidents involving its restraint systems, such as occurred herein, would on occasion take place during the normal and ordinary use of said restraint system.

25. The injuries complained of occurred because the restraint system in question was not reasonably crashworthy, and was not reasonably fit for unintended, but clearly foreseeable, accidents. The restraint system in question was unreasonably dangerous in the event it should be involved in an incident such as occurred herein.

26. Defendant, either alone or in conjunction with some other individual(s) and/or entity(ies), designed, manufactured, marketed, assembled, and/or tested said restraint system in question.

27. As detailed herein, the restraint system contains and/or Defendant has committed either design, manufacturing, marketing, assembling, and/or testing defects.

28. Defendant either knew or should have known of at least one safer alternative design which would have prevented the fatal injuries to Hector Ruiz.

29. In addition to the foregoing, Defendant, either alone or in conjunction with some other individual(s) and/or entity(ies), designed, manufactured, marketed, assembled, and/or tested said restraint system in question to be unreasonably dangerous and defective within the meaning of Section 402(A) Restatement (Second) Torts, in that the restraint system was unreasonably dangerous as designed, manufactured, assembled, marketed, and/or tested because Defendant knew and/or should have known of the following, non-exhaustive list of defects:

   a. The vehicle failed to provide proper restraint throughout the entire accident;
   b. The vehicle failed to provide adequate protection throughout the entire accident;
   c. The vehicle's seatbelt buckle unlatched during the accident in violation of FMVSS 209, the SAE and J4C;
   d. The vehicle violated principles of crashworthiness by not providing proper restraint;
   e. The vehicle violated the purpose of a seatbelt;
   f. The vehicle restraint system failed to serve the purpose of a seatbelt restraint;
   g. The restraint system was defective and unreasonably dangerous;
   h. The restraint system failure was the producing cause of the serious injuries and damages;
   i. The vehicle violated principles of crashworthiness;
   j. Defendants failed to conduct adequate testing;
   k. The Defendant failed to conduct thorough engineering analysis;

    l.    Testing by Defendant has revealed that when the pretensioner fires, the subject RNS4G buckle can unlatch;

    m.    The subject RNS4G buckle is prone to unlatch during accidents;

    n.    The subject RNS4G buckle fails to stay buckled throughout the entire accident;

    o.    The subject RNS4G buckle violated the intent and purpose of a seatbelt buckle;

    p.    The subject RNS4G buckle violates principles of crashworthiness; and/or

    q.    The subject RNS4G violates Ford's corporate objectives.

30. Defendant was negligent in the design, manufacture, assembly, marketing, and/or testing of the restraint system in question.

31. In designing a restraint system, efforts should be made by manufacturers to identify potential risks, hazards, and/or dangers that can lead to serious injury or death.

32. Once potential risks, hazards, and/or dangers are identified, then the potential risks, hazards, or dangers should be eliminated if possible.

33. If the potential risks, hazards, and/or dangers can't be eliminated, then they should be guarded against.

34. If the potential risks, hazards, and/or dangers can't be eliminated or guarded against, they should at least be warned about.

35. A company that does not conduct a proper engineering analysis that would help it to identify potential risks, hazards, and/or dangers that could seriously injure someone is negligent.

36. Based upon information and/or belief, Defendant either used or knew about advanced safety features used in Europe, Australia, Japan and some other country and chose not to offer those safety features to American consumers.

37. Defendant's occupant protection philosophy and design philosophy are utilized in various models, including ones sold overseas in other markets.

38. When Defendant designed the subject restraint system, it did not reinvent the wheel. Defendant used an enormous amount of human capital which had been acquired from numerous different engineers which had worked on many prior restraint systems. This knowledge would have been utilized in different aspects of the various designs of the subject restraint system.

39. Defendant is currently in exclusive possession and control of all the technical materials and other documents regarding the design, manufacture, and testing of the restraint system in question. Defendant is also in possession of what, if any, engineering analysis it performed.

40. However, it is expected that after all of these materials are produced in discovery and/or after Defendant's employees and corporate representatives have been deposed, additional allegations may come to light.

41. Lastly, the materials from other models, years, and countries will provide evidence regarding what Defendant knew, when it knew it, and about what was utilized or not utilized as well as the reasons why.

42. The foregoing acts and/or omissions of Defendant were the producing, direct, and/or proximate cause of the Hector Ruiz' fatal injuries and Plaintiff's damages.

## V. Damages to Plaintiffs

43. Plaintiffs seek recovery for all available damages under any applicable statute and/or common law of the state of South Dakota.

44. As a result of the acts and/or omissions of Defendant, Plaintiffs have suffered past and future: loss of care, maintenance, support, services, advise, counsel, reasonable contributions of pecuniary value, loss of companionship and society, loss of consortium, and mental anguish as a result of the death of Hector Ruiz.

45. As a result of the acts and/or omissions of Defendant, Plaintiffs have become obligated to pay reasonable and necessary funeral, and burial expenses as a result of the fatal injuries to Hector Ruiz.

46. The above and foregoing acts and/or omissions of Defendant, resulting in the fatal injuries to Hector Ruiz, have caused actual damages to Plaintiffs in the excess of the minimum jurisdictional limits of this Court.

## VI. Conclusion and Prayer

47. For the reasons presented herein, Plaintiffs pray that Defendant be cited to appear and answer, and that upon a final trial of this cause, Plaintiffs recover judgment against Defendant for:

    a. actual damages;
    b. economic and non-economic damages;
    c. prejudgment and post-judgment interest at the maximum rate allowed by law;

      d.    costs of suit; and

      e.    all other relief, general and special, to which Plaintiffs are entitled to at law and/or in equity, and/or which the Court deems proper.

### DEMAND FOR JURY TRIAL

Dated 27th day of March, 2017.

Respectfully submitted,

MAY, ADAM, GERDES & THOMPSON LLP

BY: *[signature]*
KATIE J. HRUSKA
503 South Pierre Street
P.O. Box 160
Pierre, SD 57501
(605) 224-8803
kjh@mayadam.net