UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

| | |
|---|---|
| Nora Patricia Ruiz, Individually and as Representative of the Estate of Hector Ruiz, Deceased, and Hector A. Ruiz, biological son<br><br>Plaintiffs,<br><br>-vs-<br><br>TRW Vehicle Safety Systems, Inc.,<br><br>Defendant. | 3:17-CV-03006-RAL<br><br>PLAINTIFFS' FIRST AMENDED COMPLAINT |

**To the Honorable Judge of Said Court:**

COMES NOW, Nora Patricia Ruiz, Individually and as Representative of the Estate of Hector Ruiz, Deceased, and Hector A. Ruiz, a biological son (hereinafter referred to as "Plaintiffs"), and file this First Amended Complaint against TRW Vehicle Safety Systems, Inc. (hereinafter referred to as "Defendant").

In support hereof, Plaintiffs would state and show unto the Honorable Court the following:

### I. Parties

1. Plaintiff, Nora Ruiz, is the surviving wife of Hector Ruiz, deceased. She resides in and is a citizen of Jacksonville, Texas.

2. Plaintiff, Hector A. Ruiz is a surviving son of Hector Ruiz, deceased. He resides in and is a citizen of Jacksonville, Texas.

3. Defendant, TRW Vehicle Safety Systems, Inc. is a foreign corporation doing business in Texas, and service of process upon this Defendant may be had by serving its attorney David Tippets at Weinstein Tippetts & Little LLP, 7500 San Felipe, Suite 500, Houston, Texas 77063.

## II. Jurisdiction

4. This Court has jurisdiction over the lawsuit under the provisions of 28 U.S.C. Section 1332.

## III. Facts

5. On or about January 21, 2015, Hector Ruiz was driving a 2006 Ford F250 (VIN#1FTSX21Y96ED93318) traveling southbound on Highway 47 near Reference Marker 27 in Gregory County, South Dakota and was properly wearing his 3-point restraint system.

6. The 3-point restraint system was designed by TRW Vehicle Safety Systems, Inc.

7. The 3-point restraint system was manufactured by TRW Vehicle Safety Systems, Inc.

8. The 3-point restraint system was also assembled and tested by TRW Vehicle Safety Systems, Inc.

9. The vehicle lost control, skidded, traveled through a ditch and ultimately the vehicle rolled.

10. At the time of the accident, Hector Ruiz was properly seated and wearing his 3-point seat belt and had his RNS3G buckle latched.

11. However, despite being properly restrained, Hector Ruiz suffered fatal injuries when the restraint system failed to protect him because the RNS3G buckle unlatched during the accident and allowed him to be ejected because the buckle was defective and unreasonably dangerous and it violated several crashworthiness principles.

12. Crashworthiness is the science of preventing or minimizing serious injuries or death following an accident through the use of the vehicle's safety systems including the seatbelt buckle.

13. There are five (5) recognized crashworthiness principles in the vehicle/component part industry/throughout the world. They are as follows:

    a. Maintain survival space;

    b. Provide proper restraint throughout the entire accident;

    c. Prevent ejection;

    d. Distribute and channel energy; and

    e. Prevent post-crash fires.

14. When the National Highway Traffic Safety Administration (NHTSA) created the Federal Motor Vehicle Safety Standard (FMVSS) in the late 1960's, the preamble to the safety standards included the above definition of crashworthiness.

15. Crashworthiness safety systems in a vehicle must work together like links in a safety chain. If one link fails, the whole chain fails.

16. Vehicle and component part manufacturers have known for decades and have admitted under oath that there is a distinction between the cause of the accident versus the cause of an injury.

17. Lee Iacocca, former President of Ford Motor Company stated, while President and CEO of Chrysler, that "Every American has the right to a safe vehicle."

18. General Motors has stated in the past that, "The rich don't deserve to be safer…Isn't it time we realized safety is not just for the pampered and the privileged? Safety is for all."

19. Volvo has stated that it has a goal that no one is killed or injured in a Volvo vehicle by the year 2020. Volvo has also stated that, "Technologies for meeting the goal of zero injuries and fatalities are basically known today – it is a matter of how to apply, finance, distribute and activate."

20. Because every American has the right to a safe vehicle, because safety is for all, and because technologies for meeting the goal of zero injuries and fatalities are basically known today, it is incumbent upon vehicle and component part manufacturers to investigate and find out what other companies are doing with regards to safety and to apply those same methods or technology.

21. Furthermore, a vehicle or component part manufacturer cannot choose to use safer technology in Europe, Australia, Japan, or some other country and refuse or fail to offer that same safety technology to consumers in America.

22. While there are minimum performance standards which are supposed to be met before selling a vehicle in the United States (the FMVSS), these minimum performance standards to not adequately protect the public.

23. Indeed, Joan Claybrook, former administrator of the NHTSA, wrote a letter to major auto makers where she said, "Our federal safety standards are and were intended by Congress to be minimum standards. The tragedy is that many manufacturers have treated the standards more like ceilings on safety performance rather than floors from which to improve safety."

24. Additionally, in September of 2014, a Congressional report was issued in response to the General Motors ignition switch recall. The report questioned whether NHTSA had the technical expertise, culture and analytic tools needed to address safety issues. The report stated, "NHTSA also lacked the focus and rigor expected of a federal safety regulator." It was also stated that NHTSA staff has a "lack of knowledge and awareness regarding the evolution of vehicle safety systems they regulate."

## IV. Cause(s) of Action as to Defendant

25. It was entirely foreseeable to and well-known by Defendant that accidents and incidents involving its restraint systems, such as occurred herein, would on occasion take place during the normal and ordinary use of said restraint system.

26. The injuries complained of occurred because the restraint system in question was not reasonably crashworthy, and was not reasonably fit for unintended, but

clearly foreseeable, accidents. The restraint system in question was unreasonably dangerous in the event it should be involved in an incident such as occurred herein.

27. Defendant, either alone or in conjunction with some other individual(s) and/or entity(ies), designed, manufactured, marketed, assembled, and/or tested said restraint system in question.

28. As detailed herein, the restraint system contains and/or Defendant has committed either design, manufacturing, marketing, assembling, and/or testing defects.

29. Defendant either knew or should have known of at least one safer alternative design which would have prevented the ejection and fatal injuries to Hector Ruiz because its RNS3G buckle was prone to unlatch.

30. In addition to the foregoing, Defendant, either alone or in conjunction with some other individual(s) and/or entity(ies), designed, manufactured, marketed, assembled, and/or tested said restraint system in question to be unreasonably dangerous and defective within the meaning of Section 402(A) Restatement (Second) Torts, in that the restraint system was unreasonably dangerous as designed, manufactured, assembled, marketed, and/or tested because Defendant knew and/or should have known of the following, non-exhaustive list of defects:

    a. The vehicle's RNS3G buckle failed to provide proper restraint throughout the entire accident;
    b. The vehicle's RNS3G buckle failed to provide adequate protection throughout the entire accident;
    c. The vehicle's RNS3G seatbelt buckle unlatched during the accident in violation of FMVSS 209, SAE J128 and SAE J4C;

    d.    The vehicle's RNS3G buckle violated principles of crashworthiness by not providing proper restraint;
    e.    The vehicle's RNS3G buckle violated the purpose of a seatbelt;
    f.    The vehicle's RNS3G buckle via its restraint system failed to serve the purpose of a seatbelt restraint;
    g.    The restraint system was defective and unreasonably dangerous because the RNS3G buckle was prone to unlatch during accidents;
    h.    The restraint system failure was the producing cause of the ejection, the fatal injuries and the damages;
    i.    The vehicle's RNS3G buckle via its restraint system violated principles of crashworthiness;
    j.    Defendant failed to conduct adequate testing;
    k.    The Defendant failed to conduct thorough engineering analysis;
    l.    Testing by Defendant has revealed that the subject RNS3G buckle can unlatch;
    m.    The subject RNS3G buckle is prone to unlatch during accidents;
    n.    The subject RNS3G buckle fails to stay buckled throughout the entire accident;
    o.    The subject RNS3G buckle violated the intent and purpose of a seatbelt buckle;
    p.    The subject RNS3G buckle violates principles of crashworthiness;
    q.    The RNS3G buckle was prone to false latch because the ejector springs are prone to fracture;
    r.    The actual RNS3G buckle in the subject vehicle had fractured ejector springs;
    s.    The actual RNS3G buckle in the subject vehicle had experienced false latching issues in the past;
    t.    The subject RNS3G buckle violates Ford's corporate objectives; and
    u.    The subject RNS3G buckle violates TRW's corporate objectives.

31. Defendant was negligent in the design, manufacture, assembly, marketing, and/or testing of the restraint system in question.

32. In designing a buckle restraint system, efforts should be made by manufacturers to identify potential risks, hazards, and/or dangers that can lead to serious injury or death.

33. Once potential risks, hazards, and/or dangers are identified, then the potential risks, hazards, or dangers should be eliminated if possible.

34. If the potential risks, hazards, and/or dangers can't be eliminated, then they should be guarded against.

35. If the potential risks, hazards, and/or dangers can't be eliminated or guarded against, they should at least be warned about.

36. A company that does not conduct a proper engineering analysis that would help it to identify potential risks, hazards, and/or dangers that could seriously injure someone is negligent.

37. Based upon information and/or belief, Defendant either used or knew about advanced safety features used in Europe, Australia, Japan and some other country and chose not to offer those safety features to American consumers.

38. Defendant's occupant protection philosophy and design philosophy are utilized in various models, including ones sold overseas in other markets.

39. When Defendant designed the subject restraint system, it did not reinvent the wheel. Defendant used an enormous amount of human capital which had been acquired from numerous different engineers which had worked on many prior restraint systems. This knowledge would have been utilized in different aspects of the various designs of the subject restraint system.

40. Defendant is currently in exclusive possession and control of all the technical materials and other documents regarding the design, manufacture, and testing of the restraint system in question. Defendant is also in possession of what, if any, engineering analysis it performed.

41. However, it is expected that after all of these materials are produced in discovery and/or after Defendant's employees and corporate representatives have been deposed, additional allegations may come to light.

42. Lastly, the materials from other models, years, and countries will provide evidence regarding what Defendant knew, when it knew it, and about what was utilized or not utilized as well as the reasons why.

43. The foregoing acts and/or omissions of Defendant were the producing, direct, and/or proximate cause of the Hector Ruiz' ejection, fatal injuries and Plaintiffs' damages.

## V. Damages to Plaintiffs

44. Plaintiffs seek recovery for all available damages under any applicable statute and/or common laws of the state of Texas.

45. As a result of the acts and/or omissions of Defendant, Plaintiffs have suffered in the past and will in the future: loss of care, maintenance, support, services, advise, counsel, reasonable contributions of pecuniary value, loss of companionship and society, loss of consortium, emotional distress, and mental anguish as a result of the death of their spouse and father Hector Ruiz.

46. The above and foregoing acts and/or omissions of Defendant, resulting in the fatal injuries to Hector Ruiz, have caused actual damages to Plaintiffs in the excess of the minimum jurisdictional limits of this Court.

## VI. Conclusion and Prayer

47. For the reasons presented herein, Plaintiffs pray that Defendant be cited to appear and answer, and that upon a final trial of this cause, Plaintiffs recover judgment against Defendant for:

   a. actual damages;
   b. economic and non-economic damages;
   c. prejudgment and post-judgment interest at the maximum rate allowed by law;
   d. costs of suit; and
   e. all other relief, general and special, to which Plaintiffs are entitled to at law and/or in equity, and/or which the Court deems proper.

### DEMAND FOR JURY TRIAL

Dated 28th day of April, 2017.

Respectfully submitted,

MAY, ADAM, GERDES & THOMPSON LLP

BY: /s/ Katie Hruska
KATIE J. HRUSKA
503 South Pierre Street
P.O. Box 160
Pierre, SD 57501
(605) 224-8803
kjh@mayadam.net


AND


THE TRACY FIRM

BY: /s/
E. Todd Tracy (To Be Pro Hac'd)
State Bar No. 20178650
EToddTracy@vehiclesafetyfirm.com
Stewart D. Matthews
State Bar No. 24039042
SMatthews@vehiclesafetyfirm.com
Andrew G. Counts
State Bar No. 24036408
ACounts@vehiclesafetyfirm.com
4701 Bengal Street
Dallas, Texas 75235
(214) 324-9000 – Phone
(972) 387-2205 – Fax

**Attorneys for Plaintiffs**

Plaintiffs' First Amended Complaint
Page 11 of 11